1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**O**
**JS-6**

# United States District Court
# Central District of California

LAWRENCE BRITVAN; HWE
CALIFORNIA, INC.,

            Plaintiffs,

      v.

CANTOR FITZGERALD, L.P.;
CANTOR COMMERCIAL REAL
ESTATE SPONSOR, L.P.; CANTOR
COMMERCIAL REAL ESTATE
COMPANY, L.P.; and DOES 1-10,
inclusive,

            Defendants.

Case No. 2:16-cv-04075-ODW (JPRx)

**ORDER GRANTING
DEFENDANTS' MOTION TO
TRANSFER [12]**

## I.   INTRODUCTION

Plaintiffs Lawrence Britvan and his current employer HWE California, Inc. (HWE) filed this action for declaratory relief against Britvan's former employer, Defendant Cantor Commercial Real Estate Sponsor, L.P. ("CCRES")[1] and other

---

[1] For the purposes of this Motion, CCRES will be considered Britvan's former employer, although CCRES is a non-operating Delaware corporation, with no office or place of business, and was not the operating entity for whom Britvan worked. (Lawrence Britvan Declaration ("Britvan Decl.") ¶ 1.)  Instead, Britvan worked for CCRE, a subsidiary of CFLP, and received his pay checks from yet another Cantor entity, Cantor Fitzgerald Securities. (*Id.*)

related entities, Defendants Cantor Fitzgerald, L.P. ("CFLP") and Cantor Commercial Real Estate Company ("CCREC") (collectively, Defendants).  (Complaint ("Compl."), ECF No. 1-1.)  CCRES now moves to transfer the matter to the Southern District of New York pursuant to 28 U.S.C. § 1404.  (Mot. to Transfer ("Mot."), ECF No. 12.) Based on a valid arbitration forum selection clause and in the interest of justice, the Court **GRANTS** CCRES's Motion to Transfer.[2]

## II.   BACKGROUND

This declaratory judgment action arises from a New York employment contract between Britvan, a highly paid executive and lawyer, and his former New York-based employer, CCRES.  For five years, Britvan was a resident of New York, working for CCRES in New York City under a September 8, 2010 Employment Agreement that: 1) was negotiated in New York by New York lawyers, 2) was signed in New York, 3) is governed by New York law, and 4) contains an arbitration provision that requires "any disputes, differences or controversies under [the] Agreement" to be adjudicated by a panel of arbitrators sitting in New York City.  (Declaration of Lori Pennay ("Pennay Decl.") ¶¶ 6–13; Pennay Decl. Ex. A ("Employment Agreement" §§ 8, 10).)

Britvan resigned from his employment with CCRES on September 30, 2015. (Pennay Decl. ¶ 30.)  Immediately thereafter, CCRES sent to Britvan's New York apartment non-compete payments, as provided for in the contract, which now total $375,000.  (*Id.*)

Britvan moved to California to take a job with HWE (an alleged competitor of CCRES) beginning on May 6, 2016.  (Declaration of Lawrence Britvan ("Britvan Decl.") ¶ 5.)  On May 9, 2016, Britvan and HWE filed the subject declaratory judgment action in Los Angeles County Superior Court to strip from the employment agreement its covenant not to compete, its covenant not to solicit, and its mandatory arbitration provision.  (Compl. ¶¶ 44–58.)

---

[2] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

The Complaint names as defendants CCRES, as well as two non-parties to the Employment Agreement, CFLP and CCRE.  (*Id.* ¶¶ 10–15.)  Plaintiff HWE is also not a party to the Employment Agreement.

On May 11, 2016, Plaintiffs filed in Los Angeles County Superior Court an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction, which sought to temporarily enjoin the Defendants from enforcing the provisions that Plaintiffs sought to invalidate.  (Declaration of David A. Paul "Paul Decl." ¶ 8.)  The court denied Plaintiffs' request for a TRO and scheduled a hearing on their Motion for Preliminary Injunction.  (*Id.* ¶ 9.)

On May 20, 2016, CCRES filed a special proceeding in New York Supreme Court, seeking an order, *inter alia,* a) declaring that New York law applies to the Employment Agreement and that the arbitration clause of the Employment Agreement is valid and binding on Britvan; b) compelling arbitration of any disputes arising under the Employment Agreement; and c) enjoining prosecution of the Declaratory Judgment Action.  (*Id.*¶ 10, Ex. 2)

That same day, after receiving argument from CCRES and Britvan (who appeared through counsel and did not contest the court's jurisdiction), the court granted CCRES a temporary restraining order which enjoined prosecution of the Declaratory Judgment Action pending a further hearing on CCRES's application.  (*Id.* ¶ 11, Ex. 3.)  In a court-supervised mediation on June 6, 2016, Plaintiffs state that Judge Joan Kenney verbally indicated to the parties her intent to issue an order requiring that Britvan arbitrate all claims raised in the Declaratory Judgment Action before a panel in New York.  (*Id.*)  The parties have fully briefed the New York Action, and await the court's decision and order.  (*Id.*)

On June 8, 2016, prior to the preliminary injunction hearing in the Declaratory Judgment Action, CCRES (with the consent of CFLP and CCRE) timely removed the case to this Court on the grounds that there is complete diversity between Britvan and CCRES.  (Notice of removal ("NOR"), ECF No. 1.)

On June 20, 2016, CCRES filed a demand for arbitration with the American Arbitration Association.

CCRES now moves to transfer the Declaratory Judgment Action to the Southern District of New York.  The Motion is before the Court for consideration.

### III.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer an action to any district or division "where the action might have originally been brought" in order to promote the convenience of the parties and witnesses and the interests of justice.  A district court must make two findings:  1) the transferee court is one where the action "might have been brought," and 2) the parties' and witnesses' conveniences, as well as the interests of justice, favor transfer.  *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).  This provision under 28 U.S.C. § 1404(a) "gives a district court broad discretion to transfer a case to another district where venue is also proper." *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1108 (C.D. Cal. 2007) (footnote omitted); *see also Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

When a case concerns an enforcement of a forum selection clause, section 1404(a) provides a mechanism for its enforcement and "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. Of Tex.*, 134 S.Ct. 568, 579 (2013) (internal quotation omitted). Plaintiff bears the burden of showing these exceptional circumstances that make transfer inappropriate.  *Id.* at 581.  Plaintiff must show either that the forum selection clause is not valid or that the public interest factors recognized under section 1404(a) make transfer inappropriate. *Id.* at 579, 582; *see also Bayol v. Zipcar, Inc.*, No. 14–cv–02483–TEH, 2014 WL 4793935, at *1 (N.D. Cal. Sept. 25, 2014).

## IV.   DISCUSSION

As a threshold issue, Plaintiffs' argue that the arbitration forum selection clause in the Employment Agreement is invalid and unenforceable.   (Pl.s' Opposition ("Opp'n") 8, ECF No. 22.)   As such, Plaintiffs contend that CCRES carries a heavy burden in transferring the action to the Southern District of New York based on the traditional forum non conveniens analysis.   (*Id.*)   The Court disagrees.

Judicial policy strongly favors forum selection clauses.   *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 992 (9th Cir. 2006).[3]   As such, a forum selection clause is *prima facie* valid and "should be given controlling weight in all but the most exceptional cases."   *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).   It is only under these "extraordinary circumstances unrelated to the convenience of the parties" that a transfer motion being used to enforce a forum selection clause should be denied.   *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013).

As explained by the Supreme Court in *Bremen*, there are three reasons enforcement of a forum-selection clause would be unreasonable: 1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; 2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and 3) if enforcement would contravene a strong public policy of the forum in which suit is brought.   *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 16 (1972).   As the party challenging the clause, Plaintiffs have the "heavy burden of proof" to "clearly show that enforcement would be unreasonable or unjust."   *Murphy v. Schneider National Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003).

---

[3]   An arbitration clause is "in effect, a specialized kind of forum-selection clause."   *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974); *Palmco Corp. v. JSC Techsnabexport*, 448 F. Supp. 2d 1194 (C.D. Cal. 2006) (dismissing on ground of forum non conveniens due to existence of clause requiring arbitration in Sweden); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) (courts treat "a forum  selection clause . . . as a manifestation of the parties' preferences as to a convenient forum").

### A. Valid Forum Selection Clause

Here, Plaintiffs argue that the arbitration forum selection clause in the Employment Agreement is invalid and unenforceable for the following reasons: 1) it contravenes California public policy; 2) it is substantively and procedurally unconscionable; 3) it cannot apply to HWE, a non-party to the Employment Agreement; and 4) CCRES cannot legally be a party to arbitration in the agreed upon arbitral forum.  (Opp'n 9–16.)

### 1. Contravenes Public Policy

Here, Plaintiffs argue that the arbitration forum selection clause is invalid because it violates California's public policy against covenants not to compete under Business and Professions Code section 16600.  (*Id.* 15.)  Plaintiffs note that the transferee forum, unlike California, allows covenants not to compete.  (*Id.* 16.) California district courts have found this argument to be unpersuasive.  *See e.g.,* *Marcotte v. Micros Sys., Inc.*, No. C 14–01372 LB, 2014 WL 4477349, at *8 (N.D. Cal. Sept. 11, 2014) ("[A] party challenging enforcement of a forum selection clause may not base its challenge on choice of law analysis."); *Rowen v. Soundview Commc'ns, Inc.*, No. 14-CV-05530-WHO, 2015 WL 899294, at *5 (N.D. Cal. Mar. 2, 2015); *Universal Operations Risk Mgmt., LLC v. Global Rescue LLC*, No. C 11–5969 SBA, 2012 WL 2792444, at *4 (N.D. Cal. July 9, 2012).   The problem with Plaintiffs' argument is that it does not challenge the reasonableness of the forum selection clause itself, "only the reasonableness of its effect." *Hartstein v. Rembrandt IP Solutions*, LLC, No. 12–2270 SC, 2012 WL 3075084, at *6 (N.D. Cal. July 30, 2012).  The argument, if accepted, forces the court to "make a determination of the potential outcome of the litigation on the merits in the transferee forum and whether that outcome would conflict" with California policies.  *Id.*  It asks for an overly complex analysis of "detailed speculation[.]" *Id.*

As noted above, a number of courts have followed this reasoning and rejected the argument that the enforcement of a forum selection clause would contravene

California's strong public policy against covenants not to compete.  The Court finds this line of authority to be persuasive.

### 2.  Unconscionable

Next, Plaintiffs contend that the arbitration clause is invalid because it is both procedurally and substantively unconscionable under California law.  (Opp'n 11.)

In California, a contract must be both procedurally and substantively unconscionable to be rendered invalid.  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).  The procedural component focuses on oppression, and surprise due to unequal bargaining power.  *Armendariz v. Fdn. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114, 99 (2000).  The substantive element focuses on "overly harsh" or "one-sided" results.  *Id.*  This element "has to do with the effects of the contractual terms and whether they are unreasonable."  *Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1053 (2001).

Plaintiffs argue that the clause is procedurally unconscionable because it contains boiler plate terms and was presented in a take-it or leave-it manner.  (*Id.* 12.)  The Court disagrees.  This contract was negotiated between sophisticated parties represented by counsel without evidence of surprise or coercion.  (Pennay Decl. ¶¶ 8,14.); *see A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982) ("[A] businessman usually has a more difficult time establishing procedural unconscionability in the sense of either 'unfair surprise' or 'unequal bargaining power.'").  Indeed, there is evidence that over the course of three months, Britvan, a lawyer himself, and his counsel negotiated "the description of title and responsibilities, the employment term, assignment, bonuses, indemnification policy, termination and notice, and the non-compete and non-solicitation provisions."  (*Id.* ¶ 11.)  During such negotiations, neither Brtivan nor his counsel objected to the arbitration clause in Section 8 of the Employment Agreement or to the choice of law clause in Section 10 of the Employment Agreement.  (*Id.* ¶¶ 12, 13.)  As such, the

Court finds that Plaintiffs have failed to demonstrate that the arbitration clause is procedurally unconscionable.

While both procedural and substantive unconscionability must be present, and the Court has already found procedural unconscionability lacking, the Court will briefly address Plaintiffs' arguments with respect to substantive unconscionability. Plaintiffs argue that the clause is substantively unconscionable because New York is Defendants' principal place of business and because the clause lacks mutuality. (Opp'n 14.)

To start, Defendants' selection of New York as a venue is neither unfair nor oppressive, because at the time the contract was entered into, both Britvan and Defendants were based in New York, and the terms of which were carried out in New York.

Next, Plaintiffs argue that under the arbitration clause, Defendants—and only Defendants—have the ability to select an alternative forum in order to address any breach of the agreement. (*Id.*) Section 8 of the Employment Agreement provides, "Any disputes, differences or controversies arising under this Agreement shall be settled and finally determined by arbitration before a panel of three arbitrators in New York . . . ." Section 7 of the Employment Agreement states, "notwithstanding Section 8," in the event of a breach or a threatened breach by an employee under this Agreement, the company "shall be entitled to specific performance of the Agreement or such equitable and injunctive relief."

Defendants argue that the arbitration clause does not lack mutuality because nothing in the agreement precludes Britvan from seeking the same provisional relief afforded Defendants. (Reply 9.)

Here, the potential lack of mutuality, although seemingly one-sided, is not unconscionable. In *Chin*, the court found that an arbitration clause's injunctive remedy exception was not unconscionable although it only benefitted one party under other provisions in the contract. "The injunctive remedy exception allows 'a party' to

go to court for 'injunctive or other provisional relief.'  It does not provide 'a choice of forums [solely] for the claims of the stronger party.'"  *Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 712 (2011) (quoting *Armendariz*, 24 Cal. 4th 83, 114, 99 (2000)).  Based on the injunctive relief exception, the Court here finds that the potential lack of mutuality in the clause is mitigated by the weak showing of procedural unconscionability.  Because the crucial oppressive element is lacking, the Court finds substantive unconscionability lacking with respect to the arbitration provision.

*3.  HWE is a Non-Party*

While HWE may not be a party to the arbitration agreement, it cannot escape transfer under the traditional § 1404 forum non conveniens analysis, as discussed below.

*4.  FINRA*

Plaintiffs contend that because CCRES admitted that it is not subject to the jurisdiction of the agreed upon arbitral forum, the arbitration forum selection clause is unenforceable.  (Opp'n 9.)  Section 8 of the Employment Agreement provides that any arbitration is to be conducted pursuant to the Financial Industry Regulatory Authority ("FINRA").   However, Defendants attempted to file an arbitration with another organization, the American Arbitration Association ("AAA"), because as Defendants stated, "CCRES is not subject to FINRA's jurisdiction."  (*Id.* 9–10.)

First, contrary to Plaintiff's arguments, Defendants state that CCRES's filing with AAA does not render the arbitration provision invalid or unenforceable.  (Reply 2.)  Second, Defendants state that CCRES is not subject to FINRA's jurisdiction only because it is a non-member, but that it can voluntarily submit to FINRA's jurisdiction at any time.  (*Id.* 3.)

In California state court, it is true that where an arbitration provision provides that the arbitration will be conducted pursuant to a certain organization's rules (AAA, NASD, etc.), then the arbitration must be conducted by that organization.   *See*

*Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 120 (2004) (holding that "[t]he arbitration agreement's requirement for resolution of the present dispute "in accordance with" pertinent AAA procedures means that the arbitration must take place before that designated agency, that is, in an AAA forum"). However, here, even if FINRA were unable to adjudicate this dispute, that would not invalidate the arbitration agreement. Section 5 of the Federal Arbitration Act, which both parties agree applies here, explicitly empowers district courts to "designate and appoint an arbitrator or arbitrators" where "for any other reason there shall be a lapse in the naming of the arbitrator." 9 U.S.C. § 5; *see Reddam v. KPMG LLP,* 457 F.3d 1054, 1056 (9th Cir. 2006). As such, if CCRES does not voluntarily submit to FINRA's jurisdiction, the district court can appoint another arbitrator.

## B. *Transfer under Section 1404*

Under a traditional § 1404 transfer analysis, the court must look to the "convenience of the parties and witnesses" and the "interest of justice" to see whether a case should be transferred to "a district or division where it might have been brought or to any district or division to which all parties have consented." Fed. R. Civ. P. § 1404(a). However, the "presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine Const. Co.*, 134 S. Ct. at 581. First, the plaintiff's choice of forum is given no weight, and instead, the party trying to exclude the forum selection clause "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, a forum-selection clause in a contract waives the right of the parties to challenge the preselected forum as inconvenient, thus limiting the court's consideration to the public interest factors at stake. *Id.* at 582. Such factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241(1981)). Third, a forum selection clause does

1   not allow the law of the original forum to transfer with the matter; instead, the law of

2   the preselected forum will apply.  *Id.* at 582.

3         This analysis favors transfer to the Southern District of New York under

4   § 1404.  First, the case could have been brought in the South District of New York

5   because there is proper personal jurisdiction, subject matter jurisdiction, and venue.

6   Here, Plaintiffs seek a declaratory judgment interpreting provisions of a contract that

7   was negotiated in New York, signed in New York, governed by New York law, and

8   performed in New York.  CCRES, CCRE, and CFLP all have a principal place of

9   business in New York. (Compl. ¶¶ 12–14.)  Britvan lived and worked under the terms

10  of the contract in New York for five years.  (Pennay Decl. ¶ 21.)  It is beyond dispute

11  that the overwhelming center of gravity in this case is New York and that the case

12  could have originally been brought there.

13        Second, when considering the public interest factors, transfer to the Southern

14  District of New York promotes the interests of justice.  All Defendants reside in New

15  York, the contract at issue is a New York agreement governed by New York law,

16  requiring arbitration in New York City.  This controversy is in every meaningful way

17  a local New York dispute that outweighs any interest California may have.  The

18  Southern District of New York is also a more appropriate venue because of its greater

19  familiarity with New York law, which governs the Employment Agreement.  As a

20  court that routinely applies New York law to the terms of employment contracts, the

21  Southern District of New York is best suited to rule on this matter.

22        With regard to HWE, the private interest factors used in the Ninth Circuit in

23  assessing a motion to transfer under § 1404(a) also weigh in favor of transferring the

24  case to the Southern District of New York: the location of the witnesses and relevant

25  evidence, California's lack of case-specific contacts, the applicable substantive law,

26  and the locus of purported agreements.

27        Given these circumstances, transfer to the Southern District of New York is

28  appropriate.

11

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Transfer.  (ECF No. 12.)  The Clerk of the Court shall hereby **TRANSFER** this case to the Southern District of New York for further proceedings.  As such, the Court **DENIES** as **MOOT** all pending Motions in this case (ECF Nos. 9, 17, 21).


**IT IS SO ORDERED.**

July 18, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**